**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ERICA MAURICIO and JANIE COVARRUBIAS, § § | |
| Plaintiff, § | |
| vs. § | Civil Action No. 3:14-CV-64-L-BH |
| § | |
| PHILLIP GALYEN, P.C. d/b/a Bailey & § | |
| Galyen; and PHILLIP GALYEN, § | |
| Individually, § | |
| Defendants. § | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the order of reference dated April 24, 2015 (doc. 36), before the Court is *Plaintiffs' Application for Award of Attorney's Fees, Costs and Expenses*, filed April 23, 2015. (doc. 35.) Based on the relevant filings, evidence, and applicable law, the motion should be **GRANTED**.

**I. BACKGROUND**

This application for attorney's fees arises out of an action for unpaid overtime filed by Erica Mauricio and Janie Covarrubias (Plaintiffs) against Phillip Galyen, P.C. d/b/a Bailey & Galyen and Phillip Galyen, Individually (Defendants). (doc. 19 at 1.)[1] Plaintiffs sought damages under the Fair Labor Standards Act (FLSA) for the full amount of unpaid wages and unpaid overtime compensation; liquidated damages in an amount equal to their unpaid wages and unpaid overtime compensation; reasonable attorney's fees, costs, and expenses, including expert witness costs, as provided by the FLSA; compensatory damages, liquidated damages, and punitive damages in connection with Defendants' unlawful retaliatory conduct against them; and pre-judgment and post-judgment interest. (doc. 19 at 7-8.) Plaintiffs ultimately abandoned their retaliation claim. (doc. 39 at 2.)

The parties entered into a settlement on March 9, 2015. (doc. 33 at 1.) They agreed that

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Defendants would pay Plaintiffs a specified amount, and that the issue of attorney's fees would be submitted to the Court for determination. (doc. 35 at 6.) On April 21, 2015, Plaintiffs filed an application for $91,960 in attorney's fees and $2,521.93 in costs. (*Id*. at 12.) With a timely filed response and reply (docs. 38-40), the application is now ripe for consideration.

## II. ANALYSIS

Defendants do not dispute Plaintiffs' entitlement to attorney's fees or costs. (*See* doc. 39.) They only dispute the reasonableness and necessity of the amount of fees. (*Id*. at 14.)

In adjudicating an attorney's fee award, a court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The fee applicant bears the burden of proof on this issue. *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996); *Louisiana Power & Light Co*., 50 F.3d at 324. In the second step of the lodestar method, a court must consider whether the lodestar figure should be adjusted upward or downward depending on its analysis of the twelve factors established in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir. 1974).[2] *Riley*, 99 F.3d at 760; *Louisiana Power & Light Co.*, 50 F.3d at 331. "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Houston Indep. Sch. Dist*., 158 F.3d 205, 209 (5th

---

[2] The twelve factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Cobb v. Miller*, 818 F.2d 1227, 1231 n.5 (5th Cir. 1987) (citing *Johnson*, 488 F.2d at 717–19).

Cir. 1998) (internal citations omitted). The most critical factor in determining the reasonableness of an attorney's fee award is the degree of success obtained. *Hensley*, 461 U.S. at 436.

**A.     The Lodestar**

In support of their application, Plaintiffs submit time records, declarations, invoices, and resumes. (*See* docs. 35, 35-1, 35-2, 35-3.)

*1.     Reasonable hourly rate*

Plaintiffs have the burden of showing that their counsels' hourly rates are reasonable. *La. Power & Light Co.*, 50 F.3d at 324. "Typically, the Court receives copies of resumes or summaries of the qualifications of attorneys involved in the litigation, as well as information regarding the individuals' litigation skills generally." *Neles–Jamesbury, Inc. v. Bill's Valves*, 974 F.Supp. 979, 987 n. 19 (S.D. Tex. May 30, 1997). Further, "[t]o inform and assist the court in the exercise of its discretion [in analyzing reasonable hourly rate], the burden is on the fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate ." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984) (emphasis added); *see Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) ("Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."); *Watkins v. Fordice*, 7 F.3d 454, 458 (5th Cir. 1993).

Here, Plaintiffs seek hourly rates of $400 for Douglas B. Welmaker, $400 for David Langenfeld, and $250 for Michael Parsons. (doc. 35 at 102.) They submit copies of resumes for, and declarations, by David Langenfeld and Douglas Welmaker (docs. 35-1 at 1-6; 35-2 at 1-4), but they

provide no similar evidence for Michael Parsons. Additionally, they reference several journal articles and cases in their application to establish the reasonableness of the hourly rate requested for the Dallas area. (doc. 35 at 8.) The hourly rates are consistent with the prevailing market rates in this area, and Defendants have not objected.[3] Accordingly, the hourly rates for Plaintiffs' counsel are reasonable.

### *2. Reasonable number of hours*

Defendants raise a number of objections to the reasonableness of the hours requested.[4]

#### *a. Fees incurred after July 11, 2014*

Defendants first object that the $66,477 that was incurred after July 11, 2014 is "excessive" because "Plaintiffs' Counsel should have known the proper damages claim amount", but they do not identify specific hours to which they object. (doc. 39 at 11.)

A party challenging the amount of attorney's fees must explain why or how the requested fees are unreasonable. *See Wegner v. Standard Ins. Co.*, 129 F.3d 814, 823 (5th Cir.1997); *see, e.g., HCC Aviation Ins. Grp., Inc. v. Emp'rs Reinsurance Corp.*, No. 3:05-CV-744(BH), 2008 WL 850419, at *7 (N.D. Tex. Mar. 21, 2008) ("without objections to specific entries, Respondent has not shown that the entries are unreasonable."). "Without detailed information explaining why or how the total number of hours or the rates are unreasonable, an objection to a fee request does not constrain the court's discretion." *James v. City of Dallas*, No. 3:98-CV-0436-R, 2005 WL 954999, at *2 (N.D. Tex. Apr. 25, 2005) (citing *No Barriers, Inc. v. Brinker Chili's Tex., Inc.*, 262 F.3d 496, 501 (5th Cir. 2001);

---

[3] "When the hourly rate is not objected to by the opposing party, some courts have accepted the fee applicant's asserted reasonable hourly rate." *S & H Indus., Inc.*, No. 3:11–CV–2988–M–BH, 2013 WL 6332993, at *3 n.4 (N.D. Tex. Dec. 5, 2013) (citing *Baulch v. Johns*, 70 F.3d 813, 818 n. 8 (5th Cir. 1995)).

[4] Defendants couch several of their objections to hours in terms of billing judgment or degree of success. (*See* doc. 39 at 9, 11-12.) Because Defendants appear to be requesting that those amounts be excluded from the lodestar, those arguments are considered as part of the lodestar calculation.

*Wegner*, 129 F.3d at 823). Because Defendants only generally identify attorney's fees incurred after a specific date but provide no detailed explanation of why or how any specific entries are unreasonable, their objection should be overruled.

### *b.     Mediation fees*

Next Defendants contend that $17,275 for a "failed mediation" was unreasonable. (doc. 39 at 11.)   Plaintiffs, in response, note that mediation was court ordered; the parties agreed when the mediation should occur in relation to the depositions; and that the mediation actually resulted in agreements related to liquidated damages, a three-year look back period, and use of Plaintiffs' calculations of overtime hours worked in exchange for dismissal of the retaliation claims.  (*Id*. at 9.) Defendants have not identified any specific aspects of the mediation related fees that they allege are excessive.  Accordingly, their objection should be overruled.

### *c.     Calculation of damages*

Defendants also question why "$31,150 [was] spent on calculation of damages where Plaintiffs never used the proper methodology of calculating damages." (doc. 39 at 12.)  Plaintiffs respond that their methodology of calculating damages was sound, given the deposition testimony of Defendants' expert and the lack of case law interpreting "the sections of the CFR and the DOL's Field Operations Handbook on which Plaintiffs relied." (doc. 40 at 10-12.)   They also note that "there was no determination made in this case as to whether Plaintiffs' methodology or Defendants' methodology for calculating damages was correct." (*Id*. at 2.)  Because Plaintiffs have shown there was a reasonable basis for the methodology and time spent calculating damages, Defendants' objection regarding the time spent calculating damages should be overruled.

5

### d.     *Expert report*

Similarly, Defendants object to $480 for "an expert report that was apparently incorrect and was never turned over to the Defendants" and to a time billing entry. (doc. 39 at 12; *see also* doc. 35-1 at 17.) The billing statements reflect that on July 7, 2014, Mr. Welmaker spent 1.2 hours at a rate of $400 per hour to "[p]repare expert reports and expert." (doc. 35-1 at 17.) Defendants' argument that the damage calculation was "apparently incorrect," was previously addressed. Because Plaintiffs have shown there was a reasonable basis for their methodology, Defendants' objection regarding this billing item should be overruled.

### e.     *Other expert related fees*

"Defendants submit that [the] entire expense charged by [Plaintiffs' consulting] expert [($6,965)] and charged by Plaintiffs' counsel for communications with that expert should be disallowed in its entirety in light of [the expert's] failure to ascertain the proper methodology for the calculation of damages in this case." (doc. 39 at 9.) Plaintiffs provide only a general reference to "*See* Fee Application at Attachment 2," without any other specific identification.[5] (*Id.*) As noted, a party challenging the amount of attorney's fees must explain why or how the requested fees are unreasonable. *See Wegner*, 129 F.3d at 823. Because Defendants do not explain why or how any specific entries are unreasonable, they have not shown that the entries are unreasonable and their objection should be overruled.

### f.     *Billing judgment*

Defendants object that Plaintiffs have failed to provide sufficient evidence of billing judgment.

---

[5] Attachment 2 reflects no fee for $6,965, nor any charges attributed to the expert. (*See* doc. 35-1 at 7-29.)

(doc. 39 at 11.)

Billing judgment refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours. *Walker v. U.S. Dept. of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996). "Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but hours written off." *See Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990), *vacated in part on other grounds*, 903 F.2d 352 (5th Cir. 1990). The burden is on the fee petitioners to prove that they exercised billing judgment. *Walker*, 99 F.3d at 770. "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Id.*

Here, Plaintiffs have presented evidence that counsel exercised billing judgment. The application reflects that counsel wrote off all of the hours for Ben Michael (10 hours, or $2,750), Monica Thomason (1 hour, or $125), and Mitch Dooley (0.8 hour, or $320). (doc. 35 at 6.) Counsel also excluded $20,385 of attorney time as unnecessary or for duplicative tasks and provided the time entries for the case showing the time that was written off. (docs. 35 at 6-7; 35-1 at 7-29.) Plaintiffs' evidence shows that their attorneys voluntarily reduced their fees by approximately 20 percent, which is consistent with amounts reduced by courts when applicants have failed to provide evidence of their billing judgment. *See, e.g., Walker*, 99 F.3d at 770 (reduced applicants requested fees by 15% "to substitute for the exercise of billing judgment" of the plaintiff's attorney); *Leroy v. City of Houston*, 831 F.2d 576, 585-86 (5th Cir. 1987) (ordering a 13% reduction when plaintiff's attorney made no reduction to the lodestar for billing judgment); *Saizan v. Delta Concrete Products Co.*, 448 F.3d 795 (5th Cir. 2006) (per curiam) (affirmed a 10% reduction by the trial court because the plaintiff failed to provide evidence of billing judgment). Accordingly, they have sufficiently demonstrated the

7

exercise of billing judgment, and this objection should be overruled.

**B.     Adjustments to Lodestar**

Defendants also seek a downward adjustment of the lodestar fee. (doc. 39 at 3-14.)

*1.     Proportional reduction*

Defendants first argue that "while there is no *per se* proportionality rule, this Court . . . has ample reason to reduce the requested fee award proportion to the percentage difference that exists between Plaintiffs' initial demand and the ultimate settlement amount." (doc. 39 at 3-4.)[6] They point to Plaintiffs' initial demand of $702,825.48, amended demand for $159,000, and settlement for $50,000 for unpaid overtime. (*Id.* at 3.) They argue that Plaintiffs settled the merits of their case for only 7.1% of their initial demand and 33% of their amended demand, so the fee should be reduced to $40,000. (*Id*. at 3-4.)

The most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Hensley*, 424 U.S. at 436. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440. Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436.

In *Saizan v. Delta Concrete Products Co.*, which Defendants argue is controlling, the district court reduced the lodestar in an FLSA case following a partial jury verdict and settlement on the remaining claims "in proportion to the difference between the initial prayer and the ultimate settlement

---

[6] Defendants separately address their claims that Plaintiffs did not prevail on their method of calculating overtime and that the degree of success was nominal, but they make the same proportional reduction argument for all three. The claims are therefore considered together.

8

amount," from $102,651.30 to $13,000. 448 F.3d at 798, 801 (5th Cir. 2006) (per curiam). The Fifth Circuit noted that "[w]hile a low damages award is one factor which the court may consider in setting the amount of fees, *this factor alone should not lead the court to reduce a fee.*" *Id.* at 799 (quoting *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000)) (emphasis added). "In [an FLSA case], 'an attorney's failure to obtain every dollar sought on behalf of his client does not automatically mean that the modified lodestar amount should be reduced.'" *Id.* (quoting *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 558 (7th Cir. 1999)). The Fifth Circuit stressed that the plaintiff failed to achieve success on the merits and that:

> The settlement agreement does not contain an admission of liability. Also, Plaintiffs failed to convince the court that they deserved overtime compensation, that the fluctuating worksheet method of calculating the amount of overtime compensation did not apply, that [Defendant] willfully violated the wage hour law, or that [Defendant] owed liquidated damages.

*Id.* at 801. Accordingly, it found that "the District Court had ample reason to reduce the fee award, *not relying solely on the low settlement amount* but also on Plaintiffs' failure to establish billing judgment and inability to prove any element of the case." *Id.* at 803 (emphasis added).

The Fifth Circuit recently reaffirmed its holding that a low settlement amount on it own is not enough for a reduction in *Black v. SettlePou, P.C.*, 732 F.3d 492 (5th Cir. 2013). In that FLSA case, it found that "while the district court must take the degree of success obtained into account, it would be an abuse of discretion for the district court to reduce [Plaintiffs'] attorney's fees award *solely* on the amount of damages obtained." *Id.* at 503 (emphasis added); *accord Singer v. City of Waco*, 324 F.3d 813, 829-30 (5th Cir. 2003)). In another post-*Saizan* case, it rejected the defendant's argument that a $51,750 attorney's fees award on a $3,348.29 judgment on unpaid overtime was "excessive in the light of Plaintiffs' limited recovery", finding that "[t]he district court properly calculated the

9

lodestar amount and then properly considered the Plaintiffs' limited recovery when it reduced the lodestar amount by ten percent." *Lucio-Cantu v. Vela*, 239 F. App'x 866, 867-68 (5th Cir. 2007) (per curiam).

Here, Plaintiffs and Defendants settled the FLSA claim after 15 months of litigation and four weeks before the trial setting.[7] (doc. 35 at 1.) Although Plaintiffs did not recover every dollar sought in their demand letters, they did settle the only outstanding issue,[8] and their theory of recovery was not disproved. *See, e.g., Fenner Inv., Ltd. v. Hewlett-Packard Co.*, No. 6:08–CV–273, 2010 WL 1727916, at *3 (E.D. Tex. Apr. 28, 2010) (noting that parties enter into settlement agreements before trial for a number of reasons including additional litigation cost, relative financial position of the parties, and risk). Given that they settled their case before a final trial on the merits and Plaintiffs did recover damages, the lodestar fee is reasonable. Plaintiffs' failure to recover every dollar requested in their initial demand letter does not on its own justify a reduction.

### 2. *Other Johnson Factors*

Defendants also seeks a downward adjustment based on other *Johnson* factors. Specifically, they argue for a reduction based on time and labor required, novelty and difficulty of issues, customary fee charged, amount involved and results obtained, and awards in similar cases. (doc. 39 at 12-14.) Many of the *Johnson* factors are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should therefore not be double-counted. *Jason D. W.*, 158 F.3d at 210. Here, Defendants base their *Johnson* factor adjustment arguments on claims of excessive

---

[7] Of note, the parties actually settled for $9,972 more than Defendants' expert witness contended the plaintiffs were entitled to for unpaid overtime, i.e., $40,028. (doc. 39 at 5.)

[8] Although Plaintiffs' pleaded retaliation in their third amended complaint (doc. 19 at 6-7), that claim was abandoned as part of an agreement between the parties. (*See* docs. 39 at 2; 40 at 9.)

work, incorrect methodology, a failed mediation, and proportionate reduction under *Saizan*. (See doc. 39 at 12-14.) Because these arguments have already been subsumed within Defendants' billing judgment and proportional reduction arguments, they should not be double-counted. Accordingly, no adjustment based on the *Johnson* factors is warranted.

### 3. *Alternative reduction*

"Alternatively, Defendants ask the Court to reduce the requested fee by $51,960 under the *Johnson* factors." (doc. 39 at 14.) As noted, however, the *Johnson* factors identified by Defendants to reduce the fee requested have already been considered in determining the fee amount. Accordingly, no reduction based on the *Johnson* factors is warranted and Defendants' alternative argument should be denied.

### C. Costs

A prevailing party in a civil action is entitled to recover its costs "unless the court otherwise directs." Fed. R. Civ. P. 54(d). Taxable costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of a deposition transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case. *See* 28 U.S.C. §§ 1821, 1920. A district court may decline to award statutory costs but may not award costs omitted from the statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987).

Plaintiffs seeks costs of $2,521.93 for standard items that are included in the costs recoverable under 28 U.S.C. § 1920. (docs. 35 at 12; 35-3 at 1.) This request is supported by the itemized billing records for recoverable costs. (doc. 35-3 at 1-10.) Defendants raise no objections to the costs sought by Plaintiffs, and they should therefore be granted.

## III. RECOMMENDATION

*Plaintiffs' Application for Award of Attorney's Fees, Costs and Expenses* should be **GRANTED**, and Plaintiffs should recover the amount of for $91,960 in attorney's fees and $2,521.93 in costs from Defendants.

**SIGNED** this 3rd day of December, 2015.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE